**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| S.M. and E.M. on behalf of B.M., | : |
| | : |
| Plaintiffs, | : Civil Action No. 10-4490 (MAS) (LHG) |
| | : |
| v. | : |
| | : |
| MARLBORO TOWNSHIP BOARD OF | : **MEMORANDUM OPINION** |
| EDUCATION and GARDEN ACADEMY, | : |
| | : |
| Defendants. | : |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Garden Academy's ("Defendant") Motion for Judgment on the Pleadings. (Def.'s Mot., ECF No. 27-7.) Plaintiffs S.M. and E.M., on behalf of B.M., ("Plaintiffs") filed a Cross-Motion for Summary Judgment. (Pls.' Cross-Motion for S.J., ECF No. 35.) While these motions were pending, the Parties engaged in substantial settlement negotiations. Ultimately, Plaintiffs and Defendant Marlboro Township Board of Education reached an agreement. (ECF No. 59.) However, Plaintiffs and Defendant Garden Academy were unable to resolve the instant dispute. Pursuant to a status conference with the Court, the Parties were permitted to file supplemental briefing. (ECF No. 83.) Thereafter, Defendant Garden Academy moved for Summary Judgment. (Def.'s S.J. Mot. & Opp'n, ECF No. 88.) Plaintiffs filed supplemental briefing in support of their Cross-Motion for Summary Judgment, and in opposition to Defendant Garden Academy's Motion for Judgment on the Pleadings. (Pls.' Supp. Br. & Opp'n, ECF No. 89.) Garden Academy filed a Reply Brief. (Def.'s

Reply, ECF No. 93.) Plaintiffs also filed a Reply. (Pls.' Reply, ECF No. 94.) The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78. For good cause shown, Plaintiffs' Motion for Summary Judgment is DENIED. Defendant's Motions for Judgment on the Pleadings and for Summary Judgment are DENIED in part. The instant action is REMANDED.

I.  **Background**

A.  **General Factual Allegations**

Plaintiffs are the parents of B.M., a twelve year old boy with autism. (Compl., ECF No. 7.) B.M. has a developmental disability which causes speech and language delays, poor socialization skills, poor life skills, poor eating skills, and an inability to understand or appreciate danger. (Compl. ¶ 1.) B.M. also has behavioral issues. (*Id.*) B.M. attended Garden Academy for the school years of 2007-2008 and 2008-2009. (Compl. ¶ 17.) By way of Agreement dated March 26, 2009, the parents agreed to continuing placement at Garden Academy for 2009-2010. (Def.'s Mot. 2.) Plaintiffs allege that pursuant to B.M.'s Individualized Education Program ("IEP"), B.M. is entitled to "weekly home-programming, physically in the Plaintiffs' home." (Compl. ¶ 22.) On November 30, 2009, Garden Academy sent B.M.'s parents and the Marlboro Township Board of Education a letter notifying them of its intent to terminate B.M.'s placement. (Compl. ¶¶ 45-46.) Plaintiffs allege that since that time, Defendants have not offered home-based support services. (Compl. ¶ 53.) In response to the letter, the parents filed a request for mediation. (Compl. ¶ 48.) When mediation was not successful, the matter was transferred to the New Jersey Office of Administrative Law. (Def.'s Mot. 5.)

Count I of Plaintiffs' Complaint states that the OAL's June 3, 2010 Order allegedly denies B.M. protection under the "Stay-Put" provision. (Compl. ¶ 84.) Plaintiffs further seek an

order from this Court compelling weekly home programming pending litigation, and compelling reimbursement for costs Plaintiffs incurred to provide home programming and/or compensation for programming not provided. (Compl. ¶¶ 85-86.)

Plaintiffs, in Count II of their Complaint, seek to reverse the OAL's August 11, 2010 Order dismissing a single Count of Plaintiffs' Petition for Due Process, denying Plaintiffs' Motion for Partial Summary Judgment and denying Plaintiffs from seeking an Order that Garden Academy be compelled to provide outreach or home-based support services. (Compl. ¶¶ 92-93, 97-98.) Specifically, Plaintiffs allege reversal is appropriate because the November 30, 2009 termination letter allegedly violates the IDEA and N.J. Admin. Code 6A:14-7.7(a). (Compl. ¶¶ 97-98.)

In Count III of the Complaint, Plaintiffs challenge the denial of their Motion to Compel Discovery before the OAL. (Compl. ¶ 105.) Plaintiffs sought documents related to Princeton Child Development Institute's assessments/evaluations of Defendant Garden Academy. (Compl. ¶ 106.)

Finally, in Count IV of the Complaint, Plaintiffs seek legal fees. (Compl. ¶¶ 108-111.)

Defendant, by way of an Answer, alleges a counterclaim challenging the administrative law judge's denial of its motion to terminate the placement.[1]

## II. Analysis

### A. Defendant's Rule 12(c) and Summary Judgment Motions and Plaintiffs' Cross-Motion for Summary Judgment

#### i. Rule 12(c) Standard

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A court will

---

[1] The Court does not reach this argument, as the child is no longer placed with Garden Academy.

grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c); *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). The standard governing a Rule 12(c) motion is the same standard governing motions to dismiss under Rule 12(b)(6). *Allah v. Hayman*, No. 11-2460, 2011 U.S. App. LEXIS 17860, at *8 (3d Cir. Aug. 25, 2011); *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the ... claim is and the grounds on which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* For example, the court is free to ignore legal conclusions or factually unsupported accusations which merely state that "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are

sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 545). In the end, facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

### ii. Summary Judgment Standard

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should only be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

### iii. Parties' General Positions

Plaintiffs allege that they are entitled to Summary Judgment. Specifically, Plaintiffs argue that during the 2009-2010 school year, Defendant failed to provide home programming required by B.M.'s IEP. Plaintiffs further allege that the termination of B.M. was procedurally defective. Accordingly, Plaintiffs seek to reverse the ALJ's contrary conclusions. Plaintiffs also argue that Defendant Garden Academy should have filed a Summary Judgment Motion, in lieu of a 12(c) Motion. However, the Court now has before it a Motion for Summary Judgment filed by Defendant Garden Academy.[2] (Def.'s S.J. Mot.)

Defendant's Rule 12(c) motion argues that B.M. continued to attend Garden Academy for the 2009-2010 school year without interruption. Defendant argues that termination never went into effect, and the student's education was not impacted. Garden Academy argues that the one-year contract with the school expired, thus Defendant Garden Academy "should be relieved of any obligation to continue B.M.'s placement." (Def.'s Mot. 7.) Defendant's Summary Judgment Motion reiterates the positions enumerated in the Rule 12(c) motion, and further argues that Plaintiffs' claims regarding B.M.'s termination have been rendered moot by B.M.'s voluntary withdrawal from Garden Academy pursuant to Plaintiffs' settlement with the Marlboro Township Board of Education.

### iv. Discussion

Since the relief sought calls for the reversal of certain aspects of the OAL's decision, it is important to note the standard of review guiding the Court's analysis:

---

[2] Defendant failed to annex a Statement of Undisputed Material Facts pursuant to Local Civil Rule 56.1.

> [A] district court gives "due weight" and deference to the findings in the administrative proceedings. We have described this "due weight" standard as "modified *de novo*" review.

*P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009) (internal citations omitted.) Factual findings from the administrative proceedings are considered *prima facie* correct. *See S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 269-20 (3d Cir. 2003); *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 65 (3d Cir. 2010).

### a. B.M.'s Termination

Plaintiffs argue that "the main impetus for the Parents to have filed their Petition for Due Process was because of the <u>unilateral decision</u> made by the Defendant Garden Academy to <u>terminate</u> B.M. from the private school it operates[.]" (Pls.' Supp. Br. & Opp'n.) At the heart of this allegation is the November 9, 2009 Termination Letter. (Termination Letter, PA179.)³ The letter states, in relevant part: "In accordance with the terms of the agreement executed between Garden Academy and your school district on June 16, 2009 and N.J. Admin. Code 6A:14-7.8, I am hereby providing notification of termination of B.M.'s placement at Garden Academy." Plaintiffs allege this "decision" was made without consulting them, or the Board's school district to review or revise B.M.'s IEP.

As an initial matter, Garden Academy is a receiving school, which includes "approved private schools for students with disabilities." N.J. Admin. Code 6A:14-7.1(a). Termination or withdrawal from a receiving school is governed by N.J. Admin. Code 6A:14-7.7(a), which provides in relevant part:

> When a receiving school is considering the termination of a student's placement prior to the end of the student's academic year, the receiving school shall

---

³ For ease of reference, the Court will reference the Bates Stamped numbers indicated on the documentation annexed to Plaintiffs' Appendices Volumes 1-10. (ECF Nos. 35-3 through 35-12.)

immediately contact the district board of education. The district board of education shall convene an IEP meeting according to N.J.A.C. 6A:14-2.3(k). Such meeting shall occur within 10 school days of the date of the notification and shall include the participation of appropriate personnel from the receiving school, including a minimum of one person who participated in making the recommendation to terminate the placement.

Plaintiffs argue that the Termination Letter demonstrates that Defendant did not consult the Plaintiffs or the Board's school district and that no meeting took place to review B.M.'s IEP. Plaintiffs further argue that the Stay-Put provision, which calls for the maintenance of the status quo during the pendency of litigation, does not obviate the need for an IEP meeting. *See C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 82 (3d Cir. 2010).

Defendant argues that Plaintiffs' claims as they relate to the termination of B.M. are moot. To the extent Plaintiffs argue that they are entitled to continued placement at Garden Academy, this argument is necessarily mooted by the Plaintiffs' settlement agreement, which called for the transfer of B.M. to a different facility. (Def.'s S.J. Mot. & Opp'n 11.)

"[A] procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits." *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 82.

In the present case, even assuming a procedural violation took place in the way B.M. was terminated, the Court finds that Plaintiffs have not adequately shown how any procedural violation has resulted in a loss of educational services. "A plaintiff bears the burden of establishing the harm caused by the claimed procedural shortcomings, and Plaintiffs here clearly have not met that burden." *C.M. v. Bd. of Educ. of Union Cnty. Reg'l High Sch. Dist.*, 128 F. App'x 876, 881 (3d Cir. 2005).

The letter indicating termination in and of itself did not result in a deprivation where the child was not removed from Garden Academy until a settlement was reached. Furthermore,

while Plaintiffs did not participate in an IEP meeting 10 days after the notice, this did not result in a deprivation of the parents' rights. Specifically, the parents' rights were protected in the mediation forum and subsequently before the OAL. Any right to give and receive input by the parents was not violated because the impact of the stay put provisions were such that any placement discussions would not trump the implementation of the stay put provisions due to the parents filing for mediation.

Furthermore, to the extent any deprivation did befall the parents by the lack of an IEP meeting, that injury would not be traceable to Defendant Garden Academy where it is the district which has the statutory authority to convene an IEP meeting. N.J. Admin. Code 6A:14-7.7. Marlboro Borough Township Schools indicated that no such meeting would occur. (PA 139.) For these reasons, Plaintiffs' claims as related to the termination of B.M.'s placement are moot.

### b. Compensatory Education / Home Services

Plaintiffs allege that B.M. was receiving weekly home-based services which were ultimately terminated by Defendant. This decision to terminate, according to Plaintiffs, was made unilaterally without consulting them, or the Board's school district to review or revise B.M.'s IEP.

To this end, Plaintiffs challenge the OAL's dismissal of Count IV of the parents' Petition for Due Process alleging that the termination of service forms the basis of a claim for compensatory education. Specifically, Plaintiffs allege that "prior to the generation of the September 11, 2009 letter, according to B.M.'s March 26, 2009 IEP . . . [B.M.] was supposed to have been provided weekly home-based services, physically in the Parents' home, to be provided by either his teacher or teacher's aide[.]" (Pls.' Supp. Br. & Opp'n 14) (PA47). Plaintiffs allege home visits ceased in July 2009. (*Id.* 14.)

The OAL found that the,

> services encompassed under the stay-put provisions in this matter did not include a weekly home visit by staff personnel from . . . Garden Academy. This is clear from the agreement signed . . . in September 2009, which clearly indicates that training is to occur at the school and not petitioners' residence. That September 1, 2009, agreement indicates that home programming sessions are to continue but these sessions do not require home visitations by respondent's personnel.

(ECF No. 27-6.)

The OAL concluded that the status quo did not include once per week home visitations by teachers or teachers' aides. (ECF No. 27-6.) The OAL reiterated same, stating "with respect to petitioners' claims that additional issues remain, to include the provision of home-based support services to B.M., my ruling on the emergent matter dated June 3, 2010, wherein I concluded that petitioners had agreed to the provision of the services at locations other than their home, is dispositive on this issue." (ECF No. 27-5.)

In essence, the OAL resolved the factual dispute as to whether the March 26, 2009 IEP required ongoing weekly home visits. The OAL resolved the dispute in the negative, finding credible the September 1, 2009 letter which, according to the OAL, expressed the intent of the Parties that "home programming sessions" did not require "home visitations" by respondent's personnel. Defendant provided a certification in the matter below which stood for the proposition that home programming "is a term of art" and references "training for parents to assist them in dealing with their child's behavior at home" thus it does not necessarily require that the programming take place in the home. (Def.'s S.J. Mot. & Opp'n 20.)

The Court finds that, at a minimum, there exists a material factual dispute with regard to the meaning of home programming. The Court will remand so that the ALJ can examine the Parties' positions regarding the meaning of "home-programming" as it relates to the Parties' agreements. The Court finds remand to be the most prudent course, especially in light of

Defendant Garden Academy's failure to provide a SUMF and the fact that at least one day of oral argument has not been provided to the Court, thus the present record is incomplete. In light of same, Plaintiffs' request for attorneys' fees is premature.

### c. Plaintiffs' Motion to Compel before the OAL

Plaintiffs challenge the OAL's decision to deny PCDI assessments. The OAL found that Plaintiffs did not allege that Garden Academy acted "inappropriately or inadequately." (ECF No. 27-5.) The OAL found "the parents cannot have any legitimate interest in assessments of educational processes with which they are obviously satisfied." (ECF No. 27-5.) The Court finds the OAL's decision well-reasoned and will not disturb its conclusion regarding Plaintiffs' Motion to Compel.

## III. Conclusion

For the reasons stated above, Plaintiffs' Motion for Summary Judgment is DENIED. Defendant's Motions for Judgment on the Pleadings, and for Summary Judgment are DENIED in part. The instant action is REMANDED.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: May 31, 2013